UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 3:98-CR-102 (SVN) |
| ) | |
| v. ) | |
| ) | |
| RICHARD LESPIER ) | January 16, 2025 |
| ) | |

**RULING AND ORDER GRANTING MOTION FOR REDUCTION IN SENTENCE**

Sarala V. Nagala, United States District Judge.

In 1999, Defendant Richard Lespier was sentenced to a mandatory minimum term of life in prison, having been convicted after a trial of a violent crime committed in aid of a racketeering enterprise: the murder of an individual named Carlito Brown. After serving nearly twenty-six years in federal prison, Lespier now moves for a reduction in sentence to time served or, alternatively, to a term of years.

For the reasons described below, the Court concludes that Lespier has established extraordinary and compelling reasons for a sentence reduction, and that a sentence of time served satisfies the purposes of sentencing set forth in 18 U.S.C. Section 3553(a). The Court therefore GRANTS his motion for a reduction in sentence under the First Step Act; orders that Mr. Lespier's sentence of incarceration be reduced to time served; and reimposes a term of supervised release of ten years, with conditions described below.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

At the time of Brown's murder in December of 1996, Lespier was the president of the Meriden, Connecticut chapter of the Latin Kings. He ordered his co-defendant, Luis Adorno, to kill a member of a rival gang who had "jumped" Lespier's son. In addition to ordering the murder,

Lespier drove Adorno to the scene of the murder. While Adorno ultimately missed the intended target, he hit Carlito Brown, who, tragically, died.

A federal grand jury indicted Lespier and Adorno on the charge of a violent crime in aid of a racketeering enterprise (referred to herein as "VCAR murder"). Adorno entered into a cooperation agreement with the government and testified at Lespier's trial, at which Lespier was found guilty. Later, Adorno was sentenced to a term of imprisonment of 25 years for the murder. *See* J., ECF No. 101. Adorno has served his sentence of incarceration and is currently on supervised release. *See, e.g.*, Violation Rep., ECF No. 211.

Lespier was sentenced on December 6, 1999, to life imprisonment, the mandatory sentence for his crime. J., ECF No. 109. At sentencing, Lespier made a statement, maintaining his innocence and asserting various legal errors in the trial proceedings. Tr., ECF No. 113 at 13–14. The sentencing judge opined that Lespier was a "violent, antisocial person," *id.* at 16—a finding borne out by the Presentence Report's recitation of his more than thirty prior criminal convictions, which ranged from breach of peace to narcotics and weapons offenses to significant assaults, committed when Lespier was between ages seventeen and thirty-three. Presentence Report ("PSR") ¶¶ 41–71. Lespier's conviction was affirmed on direct appeal, and his subsequent collateral motions have been denied.

To date, Lespier has served nearly twenty-six years in prison for Brown's murder.[1] During that time, he has earned his GED, worked for UNICOR for more than a decade, volunteered with the BOP's suicide watch team, successfully and voluntarily completed dozens of programs, and stayed free of disciplinary violations for the last eleven years. He was recently transferred to a

---

[1] Lespier represents that the Bureau of Prisons ("BOP") credits him for time incarcerated since February 25, 1999. *See* Def.'s Br., ECF No. 226 at 2.

2

lower-security prison within the Bureau of Prisons, in recognition of these efforts. Def's. Supp. Br., ECF No. 237 at 1.

Lespier first moved for a sentence reduction in February of 2022. *See* Mot. to Reduce Sent., ECF No. 171. Following lengthy briefing by the parties, the Court (Bryant, U.S.D.J.) denied his motion in a short text order in June of 2022: "Noting the Defendant's laudable conduct while incarcerated the court for the reasons stated in the Government's cogent objection, most notably the fact that the Defendant is subject to a mandatory minimum life sentence, denies the motion." Order, ECF No. 193.

Lespier appealed, arguing that a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for sentence reduction. *See* Appellant's Br., *United States v. Lespier*, No. 22-1372-cr, ECF No. 15, at 30–32 (2d Cir. Oct. 12, 2022) (citing *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022)). Approximately one year ago, the Second Circuit held that it was unclear whether Judge Bryant had denied the motion "on the ground that [Lespier's] mandatory minimum sentence *categorically* precluded" a grant of the motion or whether she had "treated the mandatory minimum sentence as one relevant consideration" in denying the motion. *United States v. Lespier*, No. 22-1372-cr, 2024 WL 208117, at *2 (2d Cir. Jan. 19, 2024) (summary order). The Second Circuit therefore remanded the case under *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), for supplementation of the order, to clarify the reasons for the denial. *Id.* at *3.

Upon remand, the case was reassigned to the undersigned, following Judge Bryant's retirement. The parties requested, and the Court granted, the opportunity to provide supplemental briefing on the motion. The Court then held a remote hearing on the motion, at which Lespier addressed the Court directly, and after which the parties submitted additional supplemental

3

briefing on questions identified by the Court. The Government maintains its objection to the motion, arguing both that Lespier has not established extraordinary and compelling reasons for a sentence reduction and that the Section 3553(a) factors support retaining his life sentence.

## II.     LEGAL STANDARD

Under 18 U.S.C. § 3582(c), a court may not modify a term of imprisonment once it has been imposed except under certain circumstances. Relevant here, a court may do so if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Until 2018, only the Director of the Bureau of Prisons could file a motion seeking a reduction on this basis. *See United States v. Gonzalez*, No. 3:17-cr-62 (JAM), 2020 WL 2079110, at *2 (D. Conn. Apr. 30, 2020). In 2018, the bipartisan First Step Act changed this rule, allowing inmates to file their own motions for release under this provision after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1); 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c) does not itself specify what constitutes "extraordinary and compelling reasons." Instead, 28 U.S.C. § 994 vests in the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of examples." *Id.* § 994(t). The only limitation Congress imposed is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*; *see also United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (recognizing this is the only legislative limitation and noting that whether a sentence is unusually long sentence is a relevant consideration).

In 2023, the Sentencing Commission amended Section 1B1.13 of the Sentencing Guidelines to expand the list of extraordinary and compelling reasons that qualify for sentence reduction, while emphasizing that courts could reduce sentences based on "any other circumstance

4

or combination of circumstances" that is "similar in gravity" to those enumerated. *See* U.S.S.G. § 1B1.13(b)(5). The enumerated criteria include the medical circumstances, age, and family circumstances of the defendant; whether the defendant was the victim of sexual or physical abuse while in custody; and whether a change in the law would result in a gross disparity between the sentence imposed and the sentence that would be imposed under the new law, for an inmate who has served at least ten years in custody. *Id.* § 1B1.13(b). The Guidelines also provide that, while rehabilitation itself is not an extraordinary and compelling reason, rehabilitation can be considered in combination with other circumstances. *Id.* § 1B1.13(d).

In deciding a sentence reduction motion, a district court must also consider the Section 3553(a) factors, to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A).

**III.    DISCUSSION**

The Court concludes that Lespier has established a combination of extraordinary and compelling circumstances warranting a sentence reduction, and that the Section 3553(a) factors weigh in favor of reducing his sentence to time served, nearly twenty-six years.[2]

A.    Extraordinary and Compelling Reasons for a Sentence Reduction

The combination of Lespier's unusually long sentence, his laudable rehabilitation while in custody, and his mother's grave health situation, suffice as extraordinary and compelling reasons for a sentence reduction. While none of these circumstances alone would constitute extraordinary and compelling reasons, they do when combined.

First, it is clear a sentence of life in prison is an unusually long sentence, among all federal sentences imposed. As Lespier points out, statistics from the Sentencing Commission suggest that fewer than one half of one percent of all federal defendants are sentenced to life imprisonment.

---

[2] The parties agree that Lespier has exhausted administrative remedies, rendering his motion ripe for resolution by the Court.

Def.'s Br., ECF No. 226 at 21; *see also* U.S. Sent'g Comm'n, *Life Sentences in the Federal System* at 1, 4 (Feb. 2015) (recognizing that "[l]ife imprisonment sentences are rare in the federal criminal justice system," and that, for fiscal year 2013, "these offenders represent only 0.4 percent of all offenders sentenced that year" and 2.5% of the federal sentenced offenders in the BOP system).[3] Even among murder sentences, a sentence of life imprisonment appears atypical. In 2023, the national mean sentence imposed for murder offenses was 285 months, and the median was 276 months; in the Second Circuit, the mean murder sentence was 249 months and the median was 240 months.[4] Lespier has already served about 311 months, far longer than these mean and median murder sentences.

The Government correctly notes that a sentence of life imprisonment is not unusually long for a person convicted of VCAR murder, as such a sentence was mandatory at the time Lespier was sentenced and remains the mandatory sentence today. But in assessing whether an unusually long sentence constitutes an extraordinary and compelling reason for a sentence reduction, the Second Circuit has not suggested that a court must focus narrowly on how an inmate's sentence compares to those sentenced for the same crime. Rather, that court has emphasized the discretion of district courts to assess whether a sentence is unusually or overly long in a particular case. *Brooker*, 976 F.3d at 238. Here, Lespier's life sentence is unusually long when compared to all federal sentences, and even when compared to sentences imposed in 2023 (or 1999, for that matter)

---

[3] Available at https://perma.cc/4HUB-EV55.
[4] These figures are drawn from U.S. Sent'g Comm'n, *Statistical Information Packet – Fiscal Year 2023, Second Circuit*, available at https://perma.cc/8UZH-PXDA. Sentences of life imprisonment or more than 470 months are coded as 470 months. *Id.* at 11. The Court also notes that the mean and median sentences for murder were lower in 1999, the year of Lespier's sentencing: the national mean sentence for murder was 204.7 months, while the national median was 132 months; within the Second Circuit, these figures were 170.7 months (mean) and 126 months (median). U.S. Sent'g Comm'n, *Statistical Information Packet – Fiscal Year 1999, Second Circuit*, available at https://perma.cc/Y5UQ-4TXW. The statistical information packets compiled by the Sentencing Commission do not specify which offenses are considered under the category "murder." Lespier was sentenced under U.S.S.G. § 2A1.1(a) for first degree murder. *See* PSR ¶ 33. Absent indication otherwise, the Court assumes the Sentencing Commission's statistics would have included first degree murder (even if imposed for VCAR murder convictions).

6

for murder. The Court therefore concludes that Lespier's sentence of life imprisonment is unusually long, as *Brooker* frames the inquiry. *See United States v. Cruz*, No. 3:94-cr-112 (JCH), 2021 WL 1326851, at *7 (D. Conn. Apr. 9, 2021) (finding a mandatory life sentence imposed for murder to be unusually long).

Lespier has also demonstrated other circumstances that, when combined with his unusually long sentence, provide extraordinary and compelling reasons for a sentence reduction. To begin, it is clear that Lespier has undergone significant rehabilitation while serving the last quarter-century in prison. This rehabilitation did not happen instantly, but has instead occurred over time. As Lespier expresses, when he first entered prison, he "didn't want to do anything" because he "felt too hurt, anger, tired, fear, jealous, frustrated, sadness and depressed." Def.'s Br., Ex. A, ECF No. 226-1 at 4. But meeting with a psychologist in prison—his first such visit—inspired him. *Id.* Lespier credits the psychologist with saying: "Your living is determined not so much by what life brings to you, but by the attitude you bring to life." *Id.* Lespier then realized that he had to "keep living even if it [was] here in prison." *Id.*

In the years since, Lespier has, for the first time, taken full responsibility for "all of [his] wrongs from the past, including the death of Carlito Brown." *Id.* at 1. The Court discusses Lespier's remorse further below. He has also worked to better himself. He took the GED test four times until he passed in 2009. Def.'s Br. at 13. He has taken dozens of other courses as well, including substance abuse courses. *Id.* He was selected to serve on the Suicide Watch Companion Team at USP Lewisburg, based upon a demonstration of "maturity, responsibility and commitment to the well-being of fellow inmates." *Id.* at 14. The Court agrees with Lespier that, to have earned the trust of prison staff to watch over his fellow inmates at a precarious point in their lives, is a testament to his reformed character. Moreover, Lespier has worked for UNICOR for more than

7

twelve years, and has not sustained a disciplinary ticket for eleven years. *Id.* This last achievement further supports his argument of rehabilitation, as he has sustained eleven disciplinary tickets over the earlier course of his incarceration; that he has remained ticket-free for more than a decade corroborates his argument that he has changed over time.

Lespier has also maintained strong family ties, which leads to the final compelling circumstance for a sentence reduction. Lespier's mother suffers from numerous serious health conditions, including kidney failure. *Id.* at 39. She stays in a hospital bed in Lespier's sister's living room, where his sister attends to all her needs. Def.'s Supp. Br. at 2. Lespier represents that it is not clear how much longer his mother will live, as kidney dialysis may not be feasible, given her other health problems. *Id.* While Lespier is not the only available caregiver for his mother and therefore this factor alone would not suffice, *see* U.S.S.G. § 1B1.13(b)(3)(D), in combination with his unusually long sentence and his rehabilitation while in prison, the Court finds that Lespier has demonstrated extraordinary and compelling reasons for a sentence reduction. *See United States v. Wooten*, No. 3:13-cr-18 (SRU), 2020 WL 6119321, at *8 (D. Conn. Oct. 16, 2020).[5]

B. <u>Section 3553(a) Factors</u>

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) before deciding whether a sentence reduction is warranted. *See* 18 U.S.C. § 3582(c)(1)(A). These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

---

[5] The Court also recognizes that the conditions in prison during the COVID-19 pandemic were harsher than normal. Other courts have considered this in assessing whether an inmate has demonstrated an extraordinary and compelling need for a sentence reduction. *See, e.g.*, *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). The Court weighs this factor as well, and concludes it supports Lespier's position, in combination with his other arguments.

the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes the defendant may commit; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The sentencing court did not undertake an analysis of the Section 3553(a) factors when sentencing Lespier, given that a sentence of life imprisonment was mandatory. Notwithstanding the mandatory sentence, the Court is empowered to reduce Lespier's sentence through a ruling on the present motion, if it finds that the Section 3553(a) factors support this outcome. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The Court therefore considers the Section 3553(a) factors for the first time, while recognizing that its analysis now differs from what the sentencing court's analysis would have been twenty-five years ago.

1. *Nature and Circumstances of the Offense; Just Punishment*

There is no offense more serious than murder. Lespier's motivation for killing a rival gang member—that that individual had "jumped" his son—was inexcusable, not to mention grossly disproportionate to the alleged precursive event. The murder of anyone in any circumstance, including the heat of a gang rivalry, is a tragedy. The Government attempted to contact the members of Brown's family to obtain their views on Lespier's motion, but was unable to reach them. Even without their views, however, the Court easily concludes that Lespier's crime was extremely callous. It is clear that a significant sentence of imprisonment, at the very least, is just punishment for Lespier's offense. In the Court's view, a sentence of life imprisonment, even had it not been mandated at the time, would likewise have been appropriate given the record before the Court at the time of sentencing.

On sentence reduction motions, however, courts consider whether life imprisonment remains warranted, taking all the circumstances into consideration, including the record developed over an inmate's years in prison. Indeed, Lespier points to several cases within the Second Circuit reducing life sentences, and other very lengthy sentences, for crimes as serious or more serious than Lespier's. *See* Def.'s Br. at 31–35. The sentences for these defendants were reduced to sentences between about seventeen years and forty years in prison. Additionally, as noted above, the mean and median sentences imposed for murder nationally in 2023 were 23.75 years and 23 years, respectively. It is therefore not unprecedented for persons convicted of the unquestionably serious offense of murder to serve a term of years incarcerated, rather than life in prison.

2. *History and Characteristics of Lespier*

It is clear from a review of Lespier's prior criminal convictions that, at the time of the murder and his sentencing in this case, he was a violent, hardened criminal. His criminal violations continued, virtually uninterrupted, for nearly a decade and a half. At age eighteen, he ran from and shot at police. PSR ¶ 43. He engaged in various narcotics offenses, *see id.* ¶¶ 44, 48, 53, 60, 66, 69, and state and federal weapons offenses, *id.* ¶¶ 54, 64. Perhaps most troublingly, he was convicted of several assaults, disorderly conduct, and breach of peace charges stemming from domestic violence, *id.* ¶¶ 49, 50, 51, 56, 58, 59, 65, 67, 68, and other fights, *id.* ¶¶ 61, 62, 63, 71. He committed the VCAR murder while on supervised release from his federal weapons conviction. *Id.* ¶ 72. Lespier therefore easily fell within Criminal History Category VI, the highest category. *Id.*

Lespier acknowledges this history, explaining that his otherwise relatively positive family life took a turn for the worse when he was in middle school, when his mother started dating an abusive man. Def.'s Br., Ex. A at 2–3. After he assaulted the man for assaulting his mother, his

mother became upset, and he ran away from home, where he was later introduced to using and selling drugs on the street. *Id.* Although his grandparents tried to correct his path, they were unsuccessful. *Id.* at 3. Lespier ultimately joined, and later rose to the top of, the local Latin Kings chapter. *Id.*

Lespier now argues that he is a changed man, and the Court agrees with this assessment. Critically, he has acknowledged, for the first time, his role in murdering Carlito Brown:

> I take full responsibility for all my wrongs from the past, including the death of Carlito Brown. . . . Most importantly I apologize to the courts and to the family of Mr. Brown. I deeply apologize for causing them the pain and the hurt. My actions never gave them the opportunity to enjoy a son, brother, husband. No parent deserves to lose a child. I apologize to his family, siblings, spouse, friends, and kids, if any. My actions never let him enjoy life as a son, sibling, husband or even a daddy. I take full responsibility for my actions and am so sorry from the bottom of my heart. . . .
>
> I wish I could go back and change the past but I can't. I wish I could bring back Carlito Brown but I can't. I just try to be a better person every day through my actions.

*Id.* at 2, 4–5. Through this letter, and through his comments at the remote hearing on this motion, Lespier has expressed responsibility and genuine remorse for his actions. He has also reflected on his trajectory:

> When I was younger I was out of control, put myself above everything and anybody which was stupid of me. I took law into my own hands and did whatever I wanted. This long term has showed to me to appreciate life better and always think before acting and keep in mind that violence isn't the answer to any problem. . . .
>
> I've did terrible things in my life and had to be held accountable for my actions, the choices I made had gotten me a long prison term serving over 26 years of my life away from my loved ones. I missed all the good things a father should have been there for with my kids. Today I'm older and more mature, open minded and ready for society. I want to start a new beginning and take new step[s] to be able to be a productive person of today[']s world and a part of society, and to try to make amends for the pain that I caused to others.

*Id.* at 3–4.  Lespier's words demonstrate sincere reflection on his past and a commitment to change in the future.

The Court does not simply take Lespier's word:  his efforts at rehabilitation while in custody corroborate the sentiments expressed in his letter.  He acknowledges that, initially, he did not approach his prison term with an eye toward rehabilitation.  But over time, he has engaged in mental and substance abuse treatment and many other types of programing, earned his GED, worked for UNICOR, and served the prison and his fellow prisoners.  *See, e.g.*, ECF No. 226-2 at 3–4 and ECF No. 226-6 (setting forth programming); ECF No. 226-9 (letters regarding Suicide Watch Companion Team); ECF No. 226-11 & 226-12 (letters from fellow inmates).  Now, at age fifty-nine, Lespier is significantly more mature, and more cognizant of the consequences of his actions, than he was when he committed his crimes.  The Court agrees with the Government's assessment that Lespier's criminal history is extremely troubling.  But against that history, the Court balances Lespier's demonstrated commitment to changing his ways.

3. *Protection of the Public*

The Court has likewise weighed the parties' arguments concerning the need to protect the public from future crimes Lespier might commit.  The Government is rightly concerned that a person with Lespier's criminal history and gang leadership past could pose a danger to society if released, even after being incarcerated for more than a quarter of a century.  But, on balance, the Court concludes that Lespier's commitment to rehabilitation while in prison, combined with his steadfast representation that he has cut all ties with current or former members of the Latin Kings, the conditions of release the Court will impose, and the likelihood of recidivism reducing with age, all mitigate the risk to the public posed by his release.

The Court has discussed Lespier's rehabilitation above. With respect to his cutting of ties with the Latin Kings, the Court does not weigh heavily the Government's representation that Lespier could have participated in the BOP's gang renunciation, or disassociation, program. A report by the Department of Justice's Office of the Inspector General notes that the disassociation program is not formally advertised to inmates within the BOP. Dep't of Justice Office of the Inspector General, *Audit of the Federal Bureau of Prisons' Management of the National Gang Unit* (Sept. 2024), ECF No. 244-3 at 4. It is therefore not clear Lespier would have been aware of the program before the Government raised the issue in the first round of briefing for this motion in 2022. And even then, Lespier has noted significant issues with participation in the program, including being held in segregated housing and being subjected to risks of harm on account of the program's requirement that participants cooperate with the Government. The Court thus will not require that Lespier have participated in the BOP's gang disassociation program in order to prove he has cut his ties with the Latin Kings. Lespier notes that he does not anticipate pressure to rejoin the gang, due to his age and former leadership status, which allows him to "retire" without being pulled back in. To the extent any minimal concern of renewed gang activity remains, the conditions of supervised release the Court will impose will reduce the risk that he returns to his prior criminal patterns and associations.

Nor does the Court weigh heavily the Government's bold representation, made in its 2022 briefing, that Lespier "maintains contact with known Latin King affiliates both within the prison system and outside on the street." *See* Gov't's Br., ECF No. 188 at 25–26. The Court directed the Government to produce to defense counsel all records supporting this assertion. Order, ECF No. 241. In response, the Government produced information stating that Lespier and seventeen other gang members, across ten different BOP institutions, were found to have a particular email address

13

listed on their accounts, and that that email account was utilized "to discuss gang business." Email from Brandice Bodge, ECF No. 244-2 at 3. Lespier acknowledges contacting this email address, which he represents belongs to a friend who was previously incarcerated and now released, to check on his friend and tell him to stay out of trouble. Def.'s Post-Hearing Br., ECF No. 244 at 10. That email correspondence is not in the record before the Court, and the Government does not address Lespier's explanation about it in its post-hearing supplemental briefing. *See* Gov't's Post-Hearing Br., ECF No. 245. The Court therefore has no basis to conclude that *Lespier*—as opposed to others—corresponded with the individual to conduct unspecified gang business.

Next, statistical data shows that recidivism rates decline with age. In a 2021 Sentencing Commission report, the Commission noted that "the youngest offenders had the highest recidivism rates, and those rates steadily declined with increasing age." U.S. Sentencing Comm., *Recidivism of Federal Offenders Released in 2010* at 24 (Sept. 2021).[6] Lespier will turn sixty in March of this year, at which time he will fall into the category of offenders with the lowest recidivism rate in the study (15.9%) and the longest time to rearrest (22 months). *See id.* at 25. The 2021 study was consistent with the Sentencing Commission's work four years earlier, in its 2017 Recidivism Age Report. *See id.* The lower likelihood that Lespier will be rearrested at his age is thus a factor the Court considers in determining whether a life sentence, or a further term of imprisonment, remains necessary.

Finally, the Court will impose strict conditions during his ten-year period of supervised release that will mitigate against the risk that Lespier will commit another crime. These will include a requirement that he reside at a halfway house for the first six months of his period of supervised release, to ease his transition to society; that that period be followed by a six-month

---

[6] Available at https://perma.cc/2E98-CXX4.

period of home incarceration at the home of his daughter Vanessa Lespier, with minimal exceptions; that Lespier's whereabouts be monitored with electronic monitoring technology for the six-month home confinement period; that he not associate or communicate with anyone he knows to be a current or former member of the Latin Kings gang; and that he participate in the District's Reentry Court program if space is available, which will provide him with an additional level of support.

For these reasons and with these conditions of supervised release in place, the Court believes risk to the public posed by Lespier's release will be sufficiently mitigated.

4. *Remaining Sentencing Factors*

Neither Lespier nor the Government addresses deterrence in much detail in their briefing. While the prospect of life in prison as a mandatory sentence may deter individuals from committing VCAR murder as a general matter, it is not clear that Lespier needs to serve the rest of his life in prison in order to be specifically deterred from committing crime in the future. Given the remorse and rehabilitation discussed above, the Court cannot conclude that Lespier must stay in prison to promote either general or specific deterrence.

Next, Lespier is correct that, to the extent he needs further educational or vocational training, his opportunities to get such training will be greater if he is released, rather than if he remains in custody.

With respect to reducing unwarranted sentencing disparities, it is true that, if Lespier is released short of serving his entire life in prison, he will have been afforded a more lenient sentence than the sentences imposed on others convicted of VCAR murder. But, given that individuals sentenced to mandatory minimum punishments are eligible for sentence reductions, *see Halvon*,

15

26 F.4th at 570, this particular concern about unwarranted disparities must necessarily yield to a case-by-case assessment of whether a particular person is deserving of relief.

Finally, the Court believes that reducing Lespier's sentence to time served will promote respect for the law. While the sentencing objective of promoting respect for the law is often conceived of as a reason to impose a harsher sentence, leniency in sentencing—when appropriate—also promotes respect for the law, as it embraces principles of fairness and justice. Indeed, Section 3553(a) demands that a criminal sentence be sufficient, but not greater than necessary, to serve the purposes of such a sentence. 18 U.S.C. § 3553(a). In connection with the 2023 amendments to the Sentencing Guidelines that expanded the criteria for what is considered an extraordinary and compelling reason for a sentence reduction, the Chair of the Sentencing Commission explained that the First Step Act "is about taking a first step toward a second chance for incarcerated people who need it most. For the last 40 years, the light of redemption has almost been extinguished from our federal prisons. This policy helps us rekindle that flame." Chairman Reeves, *Remarks at U.S. Sent'g Comm'n Meeting* (April 5, 2023).

The Court does not minimize or excuse Lespier's violent acts and lengthy criminal history. But taking all of the relevant circumstances into account, the Court concludes that it is just to reduce Lespier's term of incarceration to time served, so that he may reenter society and begin his path forward.

## IV.    CONCLUSION

For the reasons set forth in this ruling, the Court concludes that Lespier has established extraordinary and compelling reasons for a sentence reduction, and that a sentence of time served satisfies the purposes of sentencing set forth in 18 U.S.C. Section 3553(a). The Court therefore GRANTS his motion for a reduction in sentence under the First Step Act; orders that Mr. Lespier's

sentence of incarceration be reduced to time served; and reimposes a term of supervised release of ten years, with conditions described below. The BOP is authorized to delay execution of this Order for up to ten days after its issuance, so that it may make necessary arrangements related to Lespier's release, though the BOP is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

Lespier will be subject to the standard conditions of supervised release, in addition to the following mandatory and special conditions:

Mandatory Conditions

1. He shall not commit another Federal, State, or local crime.

2. He shall not unlawfully possess a controlled substance.

3. He shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance.

4. If the special assessment of $100 has not been paid, he shall pay it in accordance with 18 U.S.C. Section 3013.

5. He shall cooperate in the collection of a DNA sample.

Special Conditions

1. He shall not possess a firearm or other dangerous weapon.

2. He must submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; he must inform any other residents that the premises may be subject to searches pursuant to this condition.

3. He must participate in a program recommended by the Probation Office and approved by the Court for mental health treatment. He must follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise his participation in the program. He must pay all or a portion of costs associated with treatment based on his ability to pay as recommended by the probation officer and approved by the Court. The treatment provider shall be made aware of his history of domestic violence offenses and shall, to the extent necessary, address this issue in treatment.

4. He must participate in a program recommended by the Probation Office and approved by the Court for inpatient or outpatient substance abuse treatment and testing. He must follow the rules and regulations of that program. The probation officer will supervise his participation in the program. He must pay all or a portion of costs associated with treatment based on his ability to pay as recommended by the probation officer and approved by the Court.

5. For the first six months of supervised release, he must reside in a halfway house and abide by the conditions of the halfway house program.

6. Following the six months of residence in a halfway house, he shall be on home incarceration at the home of Vanessa Lespier, with exceptions only for medical and legal appointments; religious commitments; employment; and to travel to the home of his sister to care for his mother.

7. During the six-month period of home incarceration, he will be subject to location monitoring, with the specific technology utilized at the discretion of the Probation Office.

8. He shall not associate or communicate with anyone he knows to be a current or former member of the Latin Kings gang.

9. He shall participate in the District's Reentry Court program if space is available and he is admitted to the program.

10. He shall perform 250 hours of pre-approved community service. The Probation Office will supervise his participation in the program. He must provide written verification of completed hours to the Probation Office.

**SO ORDERED** at Hartford, Connecticut, this 16th day of January, 2025.

    */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE